CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
Ramanujan Nadadur (Bar No. 315718)
(E-Mail: Anuj_Nadadur@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
AMANDA DIANE GONZALES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>AMANDA DIANE GONZALES,<br>Defendant. | Case No. 5:17-cr-00179-AB<br><br>**NOTICE OF MOTION; MOTION FOR COMPASSIONATE RELEASE; EXHIBITS**<br><br>**Hearing Date: May 27, 2022**<br>**Hearing Time: 1:30 p.m.** |

Defendant Amanda Diane Gonzales, by and through her attorney of record Deputy Federal Public Defender Ramanujan Nadadur, hereby moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1). The Court ordered her to report to begin serving her sentence on May 25, 2022.

This motion is based on the attached memorandum of points and authorities, the attached exhibits, and all of the records in this case.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 11, 2022

By */s/ Ramanujan Nadadur*
RAMANUJAN NADADUR
Deputy Federal Public Defender
Attorney for Amanda Diane Gonzales

# TABLE OF CONTENTS

**PAGE**


I. INTRODUCTION AND PROCEDURAL BACKGROUND ............................. 1

II. ARGUMENT ............................................................ 2

A. Ms. Gonzales Has Fully Exhausted Administrative Review ....................... 2

B. Multiple Extraordinary and Compelling Reasons Support Release, and the Section 3553(a) Factors Support Release. ....................................... 3

1. Ms. Gonzales' Childhood Was Exceedingly Difficult. ..................... 5

2. Ms. Gonzales Was Repeatedly the Victim of Domestic Violence. ............................................................ 5

3. Ms. Gonzales Has been Addicted To Methamphetamine and Alcohol Since She Was a Pre-Teen. .......................................... 7

4. Ms. Gonzales' Transformation Is Unique and Exemplary. ............... 7

C. Ms. Gonzales Poses No Danger to the Community. ................................ 10

D. This Court Can Grant Compassionate Release As Soon as Ms. Gonzales Surrenders To Serve Her Sentence. ................................... 11

III. CONCLUSION ......................................................... 12

## TABLE OF AUTHORITIES

**PAGE(S)**

**FEDERAL CASES**

*United States v. Aruda*,
993 F.3d 797 (9th Cir. 2021) .......... 3

*United States v. Brooker*,
976 F.3d 228 (2d Cir. 2020) .......... 4

*United States v. Brown*,
411 F. Supp. 3d 446 (S.D. Iowa 2019) .......... 3

*United States v. Fower*,
No. 21-50007, Slip Op. (9th Cir. Apr. 4, 2002) .......... 2, 11

*United States v. Gunn*,
980 F.3d 1178 (7th Cir. 2020) .......... 4

*United States v. Jones*,
980 F.3d 1098 (6th Cir. 2020) .......... 4

*United States v. McCoy*,
981 F.3d 271 (4th Cir. 2020) .......... 4

*United States v. McGee*,
--- F. Supp. 3d. --- (10th Cir. Mar. 29, 2021) .......... 4

*United States v. Perez*,
2020 WL 1180719 (D. Kan. Mar. 11, 2010) .......... 8

*United States v. Shkambi*,
--- F. Supp. 3d. ---, 2021 WL 1291609 (5th Cir. Apr. 7, 2021) .......... 4

*United States v. Wade*,
2020 WL 1864906 (C.D. Cal. Apr. 13, 2020) (Snyder, J.) .......... 4

**DOCKETED CASES**

*United States v. Brim*,
No. 8:93-00098-DDP (C.D. Cal. Feb. 26, 2021), ECF No. 581 .......... 4

*United States v. Dennis*,
No. 2:98-cr-00556-GW-1 (C.D. Cal. Jan. 11, 2021), ECF No. 261 .......... 4

*United States v. Dumbrique*,
No. SACR 93-0001-CJC (C.D. Cal. Nov. 6, 2020), ECF No. 226 .......... 4

**TABLE OF AUTHORITIES**

**PAGE(S)**

*United States v. Seresi*, No. 2:89-cr-00190-SVW-17 (C.D. Cal. Nov. 12, 2020), ECF No. 1417 .................. 4

*United States v. Walden*, No. 2:92-c-00366(B)-MCS (C.D. Cal. Feb. 9, 2021), ECF No. 262 .......................... 4

*United States v. Wheeler*, No. 04-cr-329-GAF-TJH (C.D. Cal. Jan. 21, 2021), ECF No. 348 ............................ 4

**FEDERAL STATUTES AND SENTENCING GUIDELINES**

18 U.S.C. § 1028A .................................................................................... 1

18 U.S.C. § 3553 .................................................................................. 2, 3, 4, 10

18 U.S.C. § 3582 .................................................................................... passim

18 U.S.C. § 3583 .................................................................................... 2, 10

U.S.S.G. § 1B1.13 .................................................................................... 3, 4

**Miscellaneous**

Addiction Center, *Understanding Post-Traumatic Stress Disorder (PTSD)* (2021), https://www.addictioncenter.com/addiction/post-traumatic-stress-disorder/ .................................................................................... 7

First Step Act of 2019, Pub. L. No. 115, 132 Stat. 5194 (Dec. 21, 2018). ...................................................... 3

Joseph Castro, *How A Mother's Love Changes a Child's Brain* (January 30, 2012), https://www.livescience.com/18196-maternal-support-child-brain.html .................................................................................... 10

U.S. Dep't of Just., Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program*(2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf ........................ 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

On February 25, 2022, this Court sentenced Ms. Amanda Diane Gonzales ("Ms. Gonzales") to a total sentence of 24 months and one day on Count 5 and Count 6 of the indictment in this case. The Court did so reluctantly, recognizing that the sentence was based on the two-year mandatory minimum required by Ms. Gonzales' conviction under 18 U.S.C. § 1028A, but emphasizing that Ms. Gonzales had turned her life around in a unique and powerful way since her arrest in this case. As the Court observed at the hearing, "[s]he's done everything I think that we could have asked of someone to do. I do agree with her comment that I think she is a picture or a model, if you will, of rehabilitation." (Ex. A, Sentencing Transcript at 16: 21-24.)

Ms. Gonzales knows that what she did was wrong. She defrauded businesses and individuals, and she deeply regrets her actions. At the time of the offense in this case, she was addicted to methamphetamine and alcohol, an addiction borne of a broken upbringing, the repeated abuse that she suffered at the hands of her romantic partners, and her resulting battered woman syndrome.

Ms. Gonzales brings the instant motion for compassionate release based on her significant rehabilitation since the offense in this case, and the need for her to be present to raise her newborn son D.R., so that he can avoid the same fate that his mother endured as a result of absent parents.

The Amanda Gonzales who committed the offense in this case was raised alongside 23 other cousins by her maternal great-grandmother, who was pressed into service because her mother was a habitual drug user and her father was serving a life sentence for gang-related crimes. (Pre-Sentence Report ("PSR") ¶ 70.) That Amanda Gonzales was molested by her best friend's father as a child, and then began to experiment with various controlled substances around the age of 10, soon becoming hooked on methamphetamine. (PSR ¶¶ 70-71.)

The Amanda Gonzales of today decided that her past would not define her. With the support of Pretrial Services, she transformed into a loving mother, a devoted wife, a diligent employee, and, most recently, a homeowner. She continues to work towards her college degree at Mt. San Jacinto College. (Ex. B, Updated College Transcript.) And ever since her offense in this case, she has left her addiction in the past, completing residential drug treatment, residing in sober living, and now regularly attending Narcotics Anonymous meetings.

Ms. Gonzales seeks compassionate release from her 24-month and one day sentence pursuant to 18 U.S.C. § 3582(c)(1) because extraordinary and compelling reasons support such an outcome.[1] Her newborn son needs his mother, and Ms. Gonzales' positive progress should not be interrupted by a term of incarceration.

## II. ARGUMENT

In considering a motion for compassionate release under § 3582(c)(1)(A)(i), this Court must analyze four factors: first, whether Ms. Gonzales has satisfied § 3582(c)(1)(A)'s exhaustion requirement; second, whether Ms. Gonzales has demonstrated "extraordinary and compelling reasons" for release; third, whether Ms. Gonzales' release is consistent with the § 3553(a) factors; and fourth, whether Ms. Gonzales' release would present an excessive risk to the community.

Ms. Gonzales meets each of these criterion.

### A. Ms. Gonzales Has Fully Exhausted Administrative Review.

Ms. Gonzales' claim is exhausted because, by the date when this motion will be heard, more than thirty days will have passed since her request to the BOP for release. *See* 18 U.S.C. § 3583(c)(1)(A). Because she has not been designated to a BOP facility to serve her sentence, Ms. Gonzales, through counsel, submitted her request for

[1] This Court has the authority to grant Ms. Gonzales compassionate release as soon as she is in custody to begin her sentence. *See United States v. Fower*, No. 21-50007, Slip Op. at 9-10 (9th Cir. Apr. 4 2022). Ms. Gonzales has noticed this motion for May 27, 2022. This Court ordered her to surrender to begin her custodial sentence on May 25, 2022, and she will begin her sentence as of that date. (Docket No. 124.)

compassionate release to the national BOP office in Grand Prairie, Texas, as well as the national BOP office in Washington, DC. (Ex. C, Email to Grand Prairie; Ex. D, Email to Washington DC National Office.) The BOP has not taken action on these requests.

**B. Multiple Extraordinary and Compelling Reasons Support Release, and the Section 3553(a) Factors Support Release.**

Section 3582(c)(1)(A), which was passed as part of the Comprehensive Crime Control Act of 1984, allows this Court to reduce Ms. Gonzales' sentence to time served if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, Section 3582(c)(1) permitted only the BOP to initiate a compassionate release request, and only if a request complied with the Sentencing Commissions then-applicable policy statement. *See* U.S.S.G. § 1B1.13. Under these standards, the BOP only released an average of twenty-four incarcerated persons per year.[2] To reinvigorate the compassionate release program, Congress passed the First Step Act in 2018 to remove the BOP's control and instead allow a defendant or their counsel to directly petition the court for compassionate release. First Step Act of 2019, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018). The Sentencing Commission, however, has failed to issue a policy statement governing release under the First Step Act. Instead, the Commission's outdated policy statement still assumes that the Director of the BOP is the only person who can initiate a compassionate release request and makes explicit reference to an older version of the prior statute. *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019). In April of 2021, the Ninth Circuit joined its sister circuits in deciding that Section 1B1.13 is not an "applicable policy statement" that is binding on the district court. *United States v.*

[2] U.S. Dep't of Just., Office of the Inspector General, The Federal Bureau of Prisons' Compassionate Release Program(2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf.

*Aruda*, 993 F.3d 797 (9th Cir. 2021).[3] Even before *Aruda*, a growing chorus of judges in the Central District of California agreed that sentencing judges are free to decide whether they believe a certain set of circumstances to be extraordinary and compelling reasons that warrant a sentence reduction.[4]

In this case, there are multiple extraordinary compelling reasons beyond those set forward in § 1B1.13 that should persuade this Court that Ms. Gonzales' sentence should be reduced to a time-served sentence. These same reasons justify Ms. Gonzales' release under the Section 3553(a) factors. *See* 18 U.S.C. § 3582(c)(2).

---

[3] Many circuits agree on this point. *See United States v. Brooker*, 976 F.3d 228, 236-37 (2d Cir. 2020) (concluding that after the First Step Act USSG § 1B1.13 "cannot constrain district courts' discretion to consider whether any reasons are extraordinary or compelling" and that courts are therefore "free[] . . . to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release"); *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020) (same); *United States v. Shkambi*, --- F. Supp. 3d. ---, ---,2021 WL 1291609, at *1 (5th Cir. Apr. 7, 2021) (same); *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020) (same); *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020) (same); *United States v. McGee*, --- F. Supp. 3d. ---, 2021 WL 1168980 (10th Cir. Mar. 29, 2021) (same).

[4] *See e.g.*, *United States v. Wade*, 2020 WL 1864906, at *6 (C.D. Cal. Apr. 13, 2020) (Snyder, J.) (finding changes to the sentencing laws and the personal growth of the defendant to satisfy the "extraordinary and compelling" requirement for compassionate release); Order Granting Motion for Compassionate Release, *United States v. Seresi*, No. 2:89-cr-00190-SVW-17 (C.D. Cal. Nov. 12, 2020), ECF No. 1417 at 2(finding that the defendant's substantial rehabilitation, health, and, age were together "extraordinary and compelling reasons" to warrant compassionate release);Order Granting Defendant's Motion for Compassionate Release, *United States v. Dumbrique*, No. SACR 93-0001-CJC (C.D. Cal. Nov. 6, 2020), ECF No. 226 at 5(finding that the defendant's inequitable sentence in combination with rehabilitation and family circumstances presented "extraordinary and compelling reasons" to modify his sentence); Order Granting Motion for Modification of Term of Imprisonment, *United States v. Walden*, No. 2:92-c-00366(B)-MCS (C.D. Cal. Feb. 9, 2021), ECF No. 262 at 6 (finding that the defendant's personal growth, age at the time of the crime, and changes in sentencing laws were extraordinary and compelling reasons to justify a "drastic sentence reduction"); Order for Granting Motion for Compassionate Release, *United States v. Brim*, No. 8:93-00098-DDP (C.D. Cal. Feb. 26, 2021), ECF No. 581 (finding extraordinary and compelling reasons and granting sentencing reduction from life to time served); Order Modifying Sentence and Setting Conditions of Supervised Release, *United States v. Wheeler*, No. 04-cr-329-GAF-TJH (C.D. Cal. Jan. 21, 2021), ECF No. 348 (releasing a defendant serving a life sentence after sixteen years in prison due to extraordinary and compelling factors including age and health conditions); Order Modifying Sentence and Setting Conditions of Supervised Release, *United States v. Dennis*, No. 2:98-cr-00556-GW-1 (C.D. Cal. Jan. 11, 2021), ECF No. 261 (exercising discretion to grant sentencing reduction to an individual who had shown significant rehabilitation)

**1. Ms. Gonzales' Childhood Was Exceedingly Difficult.**

Extraordinary and compelling reasons support Ms. Gonzales' release because she comes from a broken background, which set her on a path of drug abuse at an early age. She has done an admirable job overcoming that background.

Ms. Gonzales' mother, Katrina King, was a habitual drug user, who met her father, Joseph Gonzales, shortly before he was sentenced to life in prison for gang-related crimes. Ms. Gonzales has never had a relationship with her biological father. (PSR ¶¶ 64, 68.) And her mother was a member of Pico Nuevo, a Pico Rivera street gang, and treated Ms. Gonzales more like a drug mule than her child. Ms. Gonzales recalls her mother instructing her to collect money and serve drugs to clients. Ms. King served roughly 14 years in prison for drug crimes. (PSR ¶¶ 69-70.)

Ms. Gonzales lived with her maternal great-grandmother for most of her life, alongside her 23 cousins. (PSR ¶¶ 70, 73.) This was not the best place for her. She was often left unsupervised, and she was tasked with caring for her younger siblings and cousins even though she could barely take care of herself.

As she grew older, Ms. Gonzales' life got no easier. At eight years old, she was molested by her best friend's father while she was asleep. (PSR ¶ 71.) During a sleepover at her best friend's house, she recalls waking up to the father standing in the doorway. He proceeded to move her shorts aside and place his fingers inside Ms. Gonzales' vagina. After a few minutes, the father removed his fingers and left the room.

Finding no one that would believe her story or offer her support, Ms. Gonzales was afraid to speak about her sexual assault for many years. She finally went to therapy after her arrest in this case and accepted that what happened was wrong.

**2. Ms. Gonzales Was Repeatedly the Victim of Domestic Violence.**

As a teenager, Ms. Gonzales first sought love with her high school sweetheart, Joshua Boggs. She became pregnant with their son Ryan at the age of 14. (PSR ¶ 74.) Mr. Boggs, however, was a methamphetamine addict, and he and Ms. Gonzales would

routinely use drugs together. While high, Mr. Boggs and Ms. Gonzales had physical altercations. (PSR ¶ 74.) After a few years together, Mr. Boggs abruptly decided to move to Nebraska. Mr. Boggs ultimately lost his battle with addiction. He passed away last year of a heroin overdose.

When Ms. Gonzales was around eighteen years old, she again attempted to find love, this time with her second child's father, Kenneth Ayers. (PSR ¶ 75.) Mr. Ayers, however, was emotionally and physically abusive and extremely jealous. He constantly threatened and accused Ms. Gonzales of being unfaithful. Mr. Ayers himself was routinely unfaithful and would leave Ms. Gonzales for days to spend time with other women. Knowing this, Ms. Gonzales feared contracting a sexually transmitted disease and attempted to refuse to have sex with Mr. Ayers. Mr. Ayers responded by raping Ms. Gonzales repeatedly.

When Ms. Gonzales became pregnant in 2011, Mr. Ayers began to beat her because he falsely believed that he was not the father of the child. These attacks escalated from once a month to roughly every day. Mr. Ayers would beat her with his fists and hands, and also drag her around the house against her will. (PSR ¶ 77.) On one occasion, he locked her in a room for two days. (PSR ¶ 77.) When Ms. Gonzales tried to take pictures of her bruises, he would delete the images and threaten her with more abuse.

She was only able to free herself from Mr. Ayers when he was arrested and ultimately convicted of domestic violence. After his arrest, however, when the authorities informed Ms. Gonzales that she would have to testify against Mr. Ayers, she actually married to him to avoid testifying. (PSR ¶ 76.) Ultimately, the authorities were able to convict Mr. Ayers of domestic violence even without Ms. Gonzales' testimony. This freed Ms. Gonzales from his control, and she divorced Mr. Ayers; she has not seen or spoken to him since that conviction. (PSR ¶ 79.)

### 3. Ms. Gonzales Has been Addicted To Methamphetamine and Alcohol Since She Was a Pre-Teen.

Even though she freed herself from Mr. Ayers, Ms. Gonzales had less luck freeing herself from methamphetamine and alcohol. These substances became Ms. Gonzales' coping mechanism to deal with the lack of compassion and care she received from her mother and father, her sexual abuse as a child, her abandonment by her high school sweetheart, and the post-traumatic stress disorder that she suffered due to her relationship with Mr. Ayers.[5]

At the age of around 12, Ms. Gonzales started to smoke marijuana. Soon thereafter, she started drinking alcohol, and became dependent on its numbing effects. At the age of 14, she started to use methamphetamine. As she got older, she started to use methamphetamine every day. (PSR ¶ 92.)

As time went on, Ms. Gonzales' substance abuse spiraled out of control. Her struggle with addiction was so powerful that, at the age of 21, she suffered a heart attack when she swallowed a bag of methamphetamine to avoid police detection. She knew that if the police found the drugs she would be incarcerated. Ms. Gonzales was in a coma for five days. (PSR ¶ 85.)

### 4. Ms. Gonzales' Transformation Is Unique and Exemplary.

There is no doubt that Ms. Gonzales came from a difficult past. But that does not justify the crime that she committed in this case. She did engage in identity theft to buy groceries and other basic necessities, at a time when she was in the throes of her addiction. She committed these crimes to survive to see the next day. However, she recognized how wrong her actions were, and pleaded guilty in this case, accepting responsibility for her actions. Since the offense, she has paid restitution to make up for

---

[5] Addiction Center, Understanding Post-Traumatic Stress Disorder (PTSD) (2021), *available at* https://www.addictioncenter.com/addiction/post-traumatic-stress-disorder/ ("The same trauma that caused PTSD can also trigger a substance use disorder.)

the losses she imposed on her victims. (Ex. E, Letter Confirming Payment of Restitution.)

This Court should grant Ms. Gonzales compassionate release based on her transformation since the offense in this case. Courts weigh this type of rehabilitation positively in finding extraordinary and compelling reasons. *See, e.g.*, *United States v. Perez*, 88-CR-10094-1-JTM, 2020 WL 1180719 at *3 (D. Kan. Mar. 11, 2010) (granting compassionate release to a defendant who over thirty years "availed himself of various educational programs").

After her arrest in this case, Ms. Gonzales began to travel the long road towards beating her addiction. While initially detained at the Central Detention Center for six months, she began to attend drug classes. After being released, Ms. Gonzales successfully completed an in-patient drug treatment program at the Inland Valley Recovery Services ("IVRS"). (PSR ¶ 82.) Ms. Gonzales then moved to a sober-living facility, Room-to-Grow #2, that she found on her own. (PSR ¶ 82.) She attends weekly Narcotics/Alcoholics Anonymous meetings, and has not used any type of drugs or alcohol since her arrest in this case. (PSR ¶ 95.)

Ms. Gonzales also devoted herself to getting and maintaining employment, to support her growing family. She first obtained a job at Taco Bell as a Service Champion while still at IVRS in June of 2018. In November 2018, she was promoted to Shift Leader. In the beginning of 2019, she was promoted to Store Manager, overseeing 36 employees. (PSR ¶ 100.) After becoming pregnant, in August of 2020, Ms. Gonzales got a job at Dash, a Kitchen Appliance Company, as a Customer Service Representative. She changed jobs because she was pregnant and the job at Dash allowed her to have a healthy pregnancy. Ms. Gonzales currently works at Carl's Jr. as a Shift Leader, a job that she began in May of 2021. She works approximately 30 hours per week. (Ex. F, Letter from Manager at Carl's Jr.)

Ms. Gonzales is enrolled at San Jacinto Community College. (Ex. A, Updated College Transcript.) She plans on obtaining an Associate's Degree in Social and

Behavior Sciences and pursuing a career in alcohol and drug counseling so that she can be a counselor for children. She wants to help children from backgrounds such as hers avoid the hardships that she faced in her childhood.

While rehabilitating herself, Ms. Gonzales fell in love with Carlos Rivera, and they are planning to get married. Carlos, Ms. Gonzales, and her 13-month year old son are building a family together, free of addiction. They recently bought a home together.



Pictured: Living Room of Ms. Gonzales' New Home

Ms. Gonzales' newborn baby needs her in his life. She cares for him every day, feeding him, bathing him, and meeting all of his daily needs. Ms. Gonzales' presence in his life goes beyond just daily care, however. Studies have shown that "a mother's love physically affects the volume of her child's hippocampus. In [one] study, children of nurturing mothers had hippocampal volumes 10 percent larger than children whose mothers were not as nurturing. Research has suggested a link between a larger

hippocampus and better memory."[6] Ms. Gonzales grew up without the nurturing presence of a mother or father. This contributed to the offense in this case. She now wants to break this cycle for her son, and raise a happy and healthy boy.





In short, there are ample "extraordinary and compelling reasons" justifying Ms. Gonzales' compassionate release in this case. These same reasons also support her release under the Section 3553(a) factors. *See* 18 U.S.C. § 3582(c)(2).

**C. Ms. Gonzales Poses No Danger to the Community.**

Ms. Gonzales's release does not present a danger to the safety of any other person in the community. 18 U.S.C. § 3583(c)(1)(A)(ii). She has been on pre-trial release for over four years and has had no issues with compliance. In fact, this supervision has been of great value to her: she has kicked her drug habit, and begun to build a future with her fiancée and newborn child. If released from her custodial sentence, she would continue on supervision.

Ms. Gonzales has a fully developed release plan in place, further mitigating any dangerousness that she may pose. If granted compassionate release, she would continue

[6] Joseph Castro, *How A Mother's Love Changes a Child's Brain*, *available at* https://www.livescience.com/18196-maternal-support-child-brain.html.

on her current path, reside in the home that she purchased with her fiancée, and maintain her employment. Her supervisor informed her that he would leave her job open for her during her prison term. (Ex. F, Letter from Manager at Carl's Jr.) If this motion is granted, she could simply stay employed. If granted compassionate release, Ms. Gonzales would also avoid having to take a leave of absence from college, and would remain enrolled at Mt. San Jacinto College.

In short, granting compassionate release to Ms. Gonzalez would ensure that her progress is not interrupted, and that she remains a productive member of society. The community would not be endangered by her release; there is a powerful argument to be made that the community, including her growing family, would benefit from her release.

**D. This Court Can Grant Compassionate Release As Soon as Ms. Gonzales Surrenders To Serve Her Sentence.**

Lastly, Ms. Gonzales will have surrendered to begin her sentence by the time this motion is heard by the Court, on May 27, 2022. Beginning on the date of her surrender, on May 25, 2022, this Court has authority to reduce her sentence to time served because she will be in BOP custody at that point in time. *United States v. Fower*, No. 21-50007, Slip Op. at 10 (9th Cir. Apr. 4, 2002) ("All this compels the conclusion that when considering the text of the current iteration of the compassionate relief statute and the statute's history, a convicted defendant must be incarcerated before he may seek such relief.")

//

//

//

//

//

//

//

## III. CONCLUSION

For all these reasons, Ms. Gonzales respectfully requests that this Court reduce her sentence to time served on May 27, 2022, and order that she begin her term of supervised release after that date.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 11, 2022

By *\/s/ Ramanujan Nadadur*

Ramanujan Nadadur
Deputy Federal Public Defender
Attorney for Amanda Diane Gonzales